Alexis Howell
Carlson Law Group, LLC
645 G Street, Suite 100, #558
Anchorage, AK 99501
P: 907.677.8111
F: 907.917.2075
Email: alexis.h@bcarlsonlaw.com

CJA Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 3:21-cr-00062-MAH-MMS |
| | ) | |
| Plaintiff, | ) | **AMENDED** |
| | ) | **REPLY TO GOVERNMENT'S** |
| vs. | ) | **OPPOSITION TO MOTION FOR** |
| | ) | **DISMISSAL OF INDICTMENT OR** |
| ROLANDO HERNANDEZ-ZAMORA, | ) | **NEW TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMES NOW**, Defendant Rolando Hernandez-Zamora ("Rolando"), by and through his counsel of record, Alexis E. Howell of Carlson Law Group, LLC, hereby submits his Reply to the Government's Opposition to Defense Motion for Appropriate Relief, and again asks this honorable Court to dismiss his case with prejudice.

I. **The Disclosures Provided by the Government Only Reinforce Rolando's Arguments in the Motion to Dismiss and Demonstrate the Need for an Evidentiary Hearing.**

Without an evidentiary hearing, the exclusion of any remedy, including dismissal, is premature. Even if the Government's assertions about AUSA "AUSA 1" supposedly

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 1 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 1 of 19

minimal involvement in this case are taken at face value, that does not defeat the need for an evidentiary hearing. The prosecution has provided the defense with contradictory information about the relationship between Judge Kindred and AUSA "AUSA 1" such as when it began how it progressed, and what information was known to AUSA "AUSA 1" and former Judge Kindred at the time of trial. Without a fair understanding of these basic facts, the Court cannot rule on the defendant's motion. An evidentiary hearing is essential to developing these facts as well as protecting judicial integrity.

At the time of the filing of the motion to dismiss, defense counsel was relying, in part, on the facts and conclusions provided in the Order of the Judicial Council of the Ninth Circuit in *In re Complaint of Judicial Misconduct*, Ninth Circuit Case No. 22-90121 ("Kindred Judicial Misconduct Order").[1] More than a month later, on August 30, 2024, counsel for the Government, AUSA Clymer, contacted defense counsel to inform her that there were disclosures related to the motion to dismiss and that he would disclose those items only if she agreed to a protective order. Counsel agreed to the protective order because of the gravity of the due process violations in this case, the pending motion to dismiss, and the great impact to her client who is in custody.

AUSA Clymer provided the disclosures to defense counsel via email. The two disclosures were letters written by AUSA "AUSA 1". One letter is dated February 20, 2023, is fifteen pages long, and is heavily redacted including full pages of redactions

---

[1] Docket 276 at 5-12, 16-27; Docket 276, Exhibit B.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL *United States v. Hernandez-Zamora*
Page 2 of 19 Case No.: 3:21-cr-00062-MAH-MMS
Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 2 of 19

and redactions of the recipient, recipient's address, the subject of the letter, and the reason for writing the letter.[2]

As best as counsel can ascertain through the redactions, the first letter appears to be AUSA "AUSA 1" matter-of-fact explanation of her relationship with former Judge Kindred. In the first five pages, AUSA "AUSA 1" explains how she met Kindred in mid-June 2021; her incidental and work-related interactions with him from mid-June 2021–January 19 or 20, 2023, and that they maintained a professional relationship throughout. Defense counsel does not know what the rest of the letter says because more than half of the letter, pages 5-14, and most of page 15 are redacted.

The second letter is dated August 9, 2024, is seven pages long, and also contains several redactions. Even with the heavy redactions, the content and tone of the second letter are vastly different from the February 20, 2023 letter. In this letter, AUSA "AUSA 1" details how beginning in November and December 2021, Judge Kindred's text messages to AUSA "AUSA 1" increased and turned from professional to personal. In conversations and texts, she states that he bragged about his political contacts because he knew she was interested in becoming a federal district court judge.[3] She also states that his texts became more intrusive. First, he told her that **_he_** "had to participate in a program due to his rage problems," that **_he_** was "extremely petty, holds grudges, and **_he_** had taken revenge on

---

[2] Govt's Sealed Exhibit 1, AUSA "AUSA 1" letter dated Feb. 20, 2023.
[3] See Govt's Sealed Exhibit 2 at 2.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL                                                        United States v. Hernandez-Zamora
Page 3 of 19                                                        Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 3 of 19

someone in the past."[4] Close in time to disclosing these personal details, he next told AUSA "AUSA 1" that he found her attractive.[5] Then as soon as he told her that he had recommended her for a "federal judgeship, he started asking [her] to send him nude photos."[6]

As early as December 2021, AUSA "AUSA 1" stated, "If I took too long to respond to Judge Kindred's message, he would send me aggressive messages asking if I did not like him anymore. I felt trapped and panicked when I felt like I was taking too long to respond to one of his texts, even if I was driving and it was unsafe to respond. He was sensitive and volatile, his mood swinging to an angry and scary place if I said the wrong thing."[7]

In the next few pages, AUSA "AUSA 1" states that she felt pressured to send nude photographs to Judge Kindred: "I felt trapped and believed I had no choice."[8] Kindred sent photographs of his penis to her and demanded that she compliment him.[9] He texted her that he wanted her to perform oral sex on him and told her to masturbate while he sent other texts.[10] AUSA "AUSA 1" stated, "I felt trapped and panicked, but in reality, I was not." *Id.* Nevertheless, she continued to text and exchange nude photographs with Kindred: "Feeling I had no other option because he has the power to ruin not only my career, but my

---

[4] *See id.* (emphasis added).
[5] *See id.*
[6] *See id.*
[7] *See id.*
[8] *See id.* at 3.
[9] *See id.*
[10] *See id.*

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 4 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 4 of 19

personal life as well, I sent him a nude photo. I cried as soon as I had sent the photo because I felt trapped and completely powerless."[11]

When she met with him alone in chambers in May 2022, AUSA "AUSA 1" described how after creating an excuse to leave the meeting that Kindred was "upset that I had not made a move on him" and as a result, she stated, "I apologized and responded in a way that I hoped would assuage him. I did not want to be in this abusive relationship with Judge Kindred, but could not see a way to get out."[12] She also stated, "If I did not respond in the way that he wanted, Judge Kindred made it clear that he has the power to ruin my life. He has made a point of telling me on several occasions he had rage issues and that he was someone who held grudges and took revenge. I could not see a way out and felt like I has no choice but to acquiesce to Judge Kindred's demands.[13] This relationship between former Judge Kindred and AUSA "AUSA 1" continued throughout his judicial inquiry and throughout Rolando's pretrial proceedings and jury trial.

These filings alone support counsel's contention in her original motion to dismiss that an evidentiary hearing is necessary in order to ascertain the extent of Judge Kindred's misconduct and bias, AUSA "AUSA 1" misconduct and bias, and the knowledge and involvement of the Office of the U.S. Attorney of the Kindred-"AUSA 1" relationship, during Rolando's pretrial proceedings and trial. Because of the letters' redactions, it is

---

[11] Sealed Exhibit 2 at 4.
[12] *Id*.
[13] *Id*. at 5.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 5 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH     Document 405     Filed 12/09/24     Page 5 of 19

impossible to ascertain to whom either of these letters were addressed and why they were written. Regardless, it seems apparent that the Office of the U.S. Attorney as AUSA "AUSA 1" employer either had knowledge of the Kindred-"AUSA 1" relationship during Rolando's pretrial proceedings and trial, or was in possession of the February 20, 2023 letter, or both. Although this first letter claims only a "professional" relationship, it is apparent the Office of the U.S. Attorney had to be aware of some form of allegation or accusation of impropriety that affected one of their own, Ms. "AUSA 1". If this were not the case, why would this letter exist? It does not appear to be the letter presented to the Ninth Circuit's investigatory committee based on the tenor of the motion filed by the Government. Further, it is clear that the letter written on August 9, 2024 was in direct response to Judge Kindred's resignation and the defense counsel's subsequent filings of motions.

For these reasons, it is evident that defense counsel is entitled to an evidentiary hearing to call Ms. "AUSA 1" and question her under oath. Furthermore, the defense should be allowed to fully develop its case with the production of documentary evidence and testimony of potentially involved individuals. Without this hearing, it is impossible for the defense to properly litigate this motion and support its position that dismissal is warranted. It is apparent from the substantial redactions, the clear change in tone between Ms. "AUSA 1" first disclosed letter and her second, and a third contradictory finding by the Ninth Circuit's investigation that, at a minimum, the defense should be granted an evidentiary hearing to explore the breadth of this conflict and misconduct and to determine

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL                                                                                   *United States v. Hernandez-Zamora*
Page 6 of 19                                                                                   Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 6 of 19

who exactly knew what and when as it relates to Rolando's case. Even the Government acknowledges that AUSA "AUSA 1" statements "could be interpreted as a self-serving attempt to excuse" and that "both of the senior AUSA's versions of the events are uncorroborated, in large part because of her apparent decision to delete messages from Kindred and to communicate with him through an application that automatically deletes messages."[14]

## II. The Assertion that Ms. "AUSA 1" did not "Represent the Government" Simply because She did Not Enter Her Appearance is Utterly Preposterous.

The moment AUSA "AUSA 1" entered the courtroom during Rolando's trial, it was apparent she represented the government. She continued to serve as an AUSA, she introduced herself as an AUSA, and was seen directly consulting with the two AUSAs who had entered Notices of Appearance, and appeared throughout the case. If she was not a representative of the Government, it begs the question why an AUSA getting paid a full salary took the time away from her assigned caseload to watch a week-long trial that she was "not involved with." The Government's contention regarding this falls short.

Further, regardless of her "position" while in the courtroom, her presence significantly increased the bias (or at a minimum appearance of bias) and unfairness of Rolando's trial. It is impossible for the defense to know at this point whether AUSA "AUSA 1" continued to text Judge Kindred throughout this case, text about the case, threatened to expose him,

---

[14] Docket 307 at FN 5.

REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL *United States v. Hernandez-Zamora*
Page 7 of 19 Case No.: 3:21-cr-00062-MAH-MMS
Case 3:21-cr-00062-MAH     Document 405     Filed 12/09/24     Page 7 of 19

or if Kindred minimally was distracted by AUSA "AUSA 1" presence based on his knowledge of the Judicial Committee's findings and his eminent resignation. AUSA "AUSA 1" was aware of the conflict and should not have placed herself in the courtroom and Judge Kindred was well aware of the conflict and should have recused himself as soon as he saw her acting as a member of the Government team on the case.[15]

The Government cites to *Spangle*, arguing that recusal was not required in this case, and analogizes AUSA "AUSA 1" relationship with Judge Kindred to that of "a close friend or colleague." However, this characterization does not survive looking to either AUSA "AUSA 1" recount of her relationship with Judge Kindred as "abusive" or at the characterization put forward by the judicial investigation report which described it as "flirtatious." Further, it is clear from AUSA "AUSA 1" August 2024 letter that Judge Kindred had threatened her position as an AUSA, her future as a potential judge, and his recommendation for her appointment unless she comply to his desires. Based on these threats, it seems to reason that AUSA "AUSA 1" presence throughout trial after the release to Judge Kindred of the Judicial Committee's report on its own could be taken as a threat in the inverse of the threats he had previously made.

Specifically, although the Court in *Spangle* found that the defendant's information on the judge was not sufficient to constitute a threat, and therefore did not require recusal,

---

[15] See Government's Exhibit 2 at 3. Keep in mind by this point in their relationship, according to AUSA "AUSA 1" letter, she had already asked whether Kindred was going to recuse himself from cases she was assigned.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL                                               *United States v. Hernandez-Zamora*
Page 8 of 19                                               Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 8 of 19

this case is substantially different from *Spangle*. "When the alleged basis for recusal is a threat against the judge, the objective prong warrants recusal if a 'reasonable third-party observer would perceive that there is a significant risk that the judge will be influenced by the threat and resolve the case on a basis other than the merits.'"[16] "The judge must evaluate the risk that the threat will be carried out and the extent of harm realized if the threat is fulfilled."[17] In *Spangle*, the Court held that the judge had no need to recuse himself as the "threat" was non-credible, and instead, that Spangle had simply acquired publicly available information about the judge.

To the contrary, in this case, AUSA "AUSA 1" was in possession of information which had not been shared with anyone. Although true that Kindred likely knew throughout the entirety of Rolando's case that the Judicial Committee knew he had exchanged nude photos with AUSA "AUSA 1", he also likely knew that AUSA "AUSA 1" possessed additional information that had not been shared with the Committee. This is evident by AUSA "AUSA 1" stark shift in tone and position between her February 2023 letter and August 2024 letter.

One of two scenarios was true – first, AUSA "AUSA 1" is a victim of Kindred or second, that she was a willing participant. In the first, this was a clear conflict as Kindred necessarily observed AUSA "AUSA 1" in the courtroom and knew she had information

---

[16] *United States v. Spangle*, 626 F.3d 488 (9th Cir. 2010), *citing United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008).
[17] *Id.*

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL *United States v. Hernandez-Zamora*
Page 9 of 19 Case No.: 3:21-cr-00062-MAH-MMS
Case 3:21-cr-00062-MAH Document 405 Filed 12/09/24 Page 9 of 19

pertaining to the abusive nature of their relationship which she had not shared with the judicial council, but could quickly share if rulings went against the government. In the second, as soon as AUSA "AUSA 1" became aware of the Judicial Inquiry, she would have been worried about the hit to her personal reputation and also aware that she could use this information to her advantage – in fact, it worked – she kept her mouth quiet and was able to get promoted.

Finally, *Spangle* is also inappropriate as it is not a criminal defendant who made threats against the judge, but rather the judge who had made threats against the AUSA who had, up until that point, seemingly kept her mouth shut. Spangle is simply irrelevant as the idea that Kindred, in light of all that we know occurred, could be trusted to "assess the seriousness of a threat" when he himself had made a threat he hoped to keep secret. This is not merely a case of a "judge's personal but non-familial relationship with an attorney."[18] This is the case of an AUSA who was present for the entirety of trial who had a secret, illicit sexual-in-nature affair with the presiding judge.

Finally, the Government asserts that the U.S. Attorney's Office was unaware of this conflict until the published Judicial Committee Report and AUSA "AUSA 1" August 9, 2024 letter. However, this is not supported by any additional declarations from the US Attorney's Office, the letters are so redacted that defense counsel is unaware who they were even written to and therefore who was aware of the content of them, and it is impossible to

---

[18] Docket 307 at 25.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL  *United States v. Hernandez-Zamora*
Page 10 of 19  Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH     Document 405     Filed 12/09/24     Page 10 of 19

tell if this is *everything* that the U.S. Attorney's Office knew. To write off one of their own as acting independently, while at the same time discrediting her credibility in her statements is far from reassuring to a defendant who remains in jail after this significant misconduct.

### III. Harmlessness is Not the Appropriate Standard as the Mere Risk of Bias is Sufficient to Demonstrate a Constitutional Violation.

The Government asserts that because any error on behalf of Judge Kindred was allegedly "harmless," Rolando is not entitled to relief. However, "harmless error" is not the appropriate standard here. "Objective standards may also require recusal whether or not actual bias exists or can be proved."[19] Due process "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties."[20] "The failure to consider objective standards requiring recusal is not consistent with the imperatives of due process."[21] When a defendant's "right to have his case tried by an impartial judge is compromised, there is structural error that requires automatic reversal."[22] The Government cites to in *re Jud. Misconduct*, F.4th 851, 852 (9th Cir. 2023) for the proposition that judicial misconduct proceedings cannot be used

---

[19] *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 886-87 (2009).
[20] *In re Murchison*, 349 U.S. 133, 136 (1955).
[21] *Caperton*, 556 U.S. at 886; *see also Ward v. Monroeville*, 409 U.S. 57, 60 (1972).
[22] *Greenway v. Schriro*, 653 F.3d 790, 805 (9th Cir. 2011). *See Tumey v. Ohio,* 273 U.S. 510, 535 (1927) (rejecting the argument that the judge's failure to recuse himself was harmless in light of the defendant's clear guilt because "[n]o matter what the evidence was against him, he had the right to have an impartial judge."; *see also Chapman v. California*, 386 U.S. 18, 23 (1967) (recognizing the right to an impartial judge as among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error").

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 11 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH     Document 405     Filed 12/09/24     Page 11 of 19

to obtain reversal of a decision, obtain a new trial, or to request reassignment to a different judge. However, the government does not cite the entire sentence which states, "Judicial misconduct proceedings are not a substitute for the normal appellate review process, and may not be used to seek reversal of a judge's decision, to obtain a new trial, or to request reassignment to a different judge."[23] Specifically, the cited case was filed by a pro se litigant seeking to open a judicial misconduct proceeding in an attempt to overturn his case. Here, Rolando does not seek to use a judicial misconduct proceeding to obtain a new trial, but instead uses the judicial misconduct *findings* as evidence to support that Rolando's trial was constitutionally unjust and violated his due process rights.

As of 2021, Judge Kindred had an inappropriate relationship with Ms. "AUSA 1". Whether it was consensual as relayed by Judge Kindred or coercive as described by Ms. "AUSA 1" (in a stark departure from her initial interview), Judge Kindred was well aware of his actions with this senior AUSA, their similarity to the charge in Rolando's case, and clearly saw Ms. "AUSA 1" in the courtroom throughout Rolando's trial. Although Judge Kindred likely should have recused himself as soon as he was aware of the similarity between his conduct and that with Ms. "AUSA 1", at a minimum, he had a duty to recuse himself prior to trial.

As of April 5, 2024, the Special Committee confronted Judge Kindred with "contemporaneous evidence," and he finally admitted "that he received nude photos from

---

[23] *In re Jud. Misconduct*, F.4th 851, 852 (9th Cir. 2023).

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 12 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 12 of 19

[the] senior AUSA and that some flirtation occurred."[24] Their Order on judicial misconduct was issued May 23, 2024 – almost a month prior to Rolando's trial, but less than a week before the initially scheduled trial. In this way, Judge Kindred was (1) aware of the findings against him, (2) able to apprise the similarity between his misconduct and the charged misconduct, (3) aware that he would either be impeached or need to resign, and (4) saw Ms. "AUSA 1" in the courtroom throughout Rolando's trial. At any one of these points, Judge Kindred could have and should have recused himself. Instead, he chose to sit the entire trial and stand in judgment when he was clearly biased and could not have been considered impartial.

On September 3, 2024, the Government filed its opposition to the motion to dismiss. Government counsel devotes considerable pages recounting the trial and spends little time addressing former Judge Kindred's judicial misconduct, his bias, or the nature of the unethical (and in AUSA "AUSA 1" word's "abusive") relationship that Kindred had with her at the time of Rolando's pretrial proceedings and trial. Notably, in its public filing of its opposition to the motion to dismiss, Government counsel wholly dismisses the idea that former Judge Kindred's conduct was similar to the conduct that was alleged to Rolando: "There is no evidence that Judge Kindred acted "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass or intimidate" anyone."[25] AUSA "AUSA 1" own words belie the Government's argument.

---

[24] Ninth Circuit Order at 25.
[25] Docket 307 at 18-19.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL  
Page 13 of 19

*United States v. Hernandez-Zamora*  
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH     Document 405     Filed 12/09/24     Page 13 of 19

While there is no allegation here that Kindred attempted to kill or injure AUSA "AUSA 1", AUSA "AUSA 1" August 9, 2024 letter recounts numerous instances in which she states that Kindred harassed and intimidated her. In fact, AUSA "AUSA 1" recounts feeling "trapped" and like she had to respond in a particular way, especially given Kindred's continued comments regarding his "rage" and need for classes regarding the same.[26] It's true that Kindred never fired a gun in "AUSA 1" presence, but in the small legal community that is Alaska, and the even smaller community that is the federal judiciary in Alaska, his threat to withdraw his support of her would be the equivalent of firing a gun in the backyard of her career.[27]

To say this does not mirror the alleged behavior of Rolando is to bury one's head in the sand. To further complicate matters and to increase the appearance of bias, what we know at this point is (1) that Judge Kindred knew he had been investigated for an inappropriate relationship with AUSA "AUSA 1", (2) that he likely knew AUSA "AUSA 1" had lied about the extent of their relationship (as evidenced by the February 20, 2023 letter and seemingly the findings of the Ninth Circuit investigation as they do not note a coercive nature of the "flirtatious, sexual nature" of the relationship between Kindred and

---

[26] *See* Government's Sealed Exhibit 2 at 3-5.
[27] *See* Government's Sealed Exhibit 2 at 4: "The next time I saw Judge Kindred at the gym, he told me that I was on Senator Murkowski's list. He said he was a gentlemen and he was not going to ask anything in return. However, after he left the gym, he messaged me and insinuated that I should find a way to thank him. He also implied he that he had the power, ability, and willingness to ruin everything if he did not get what he wanted. I asked him what he wanted. He said more photos."

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 14 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 14 of 19

"AUSA 1"), (3) that AUSA "AUSA 1" was present throughout the entirety of trial in an open and notorious manner, (4) that Kindred had to understand the potential appearance of bias considering the similarity between the investigation against him and the charge sitting in front of him, and finally (5) that there was, at a minimum, an appearance, that AUSA "AUSA 1" presence in the courtroom was unnecessary for any other purpose than to relay to Kindred that a misstep on this case could lead to "AUSA 1" opening the floodgates and revealing the true extent of their relationship.

The Government's argument regarding harmless error is misplaced under these circumstances. Due process, specifically the requirement of a fair and impartial trial (which includes fair and impartial pretrial rulings and evidentiary decisions) is one of the most sacred Constitutional protections in the United States.

IV. **Judge Kindred's Statements Regarding Evidentiary Sufficiency and Subsequent Denial of Rolando's Motion for Acquittal Mere Days Before His Resignation Highlight the Evidentiary Sufficiency Issues in this Case, Regardless of the Government's Characterization of the Evidence.[28]**

---

[28] Defense notes that at the time of this motion, Rolando's phone has, in fact, been able to be extracted. For an inexplicable reason, although the phone was in the possession of the FBI, because the search warrant was issued by the State of Alaska, a copy of this extraction has been shared with Rolando's State counsel, but undersigned counsel has yet to receive a copy of this extraction. Government counsel has clearly not only received a copy of this extraction, but has begun to exploit and review it as Government counsel contacted the undersigned to alert the Defense that potentially privileged communications were discovered during the search of this phone. Even post-trial, the Government has continued to proceed in a questionable manner regarding what is likely exculpatory evidence.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 15 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 15 of 19

On June 27, 2024, during trial, Defense counsel requested a jury instruction related to the failure to collect the entirety of Y.S.'s cell phone. In response, Judge Kindred stated, "I'm looking at it from the perspective of, one, the manner in which government chose to approach this indictment and the indictment reads as: "Beginning in or about May 2016 through May 29th, 2020." And so I've read the corresponding case law, but I guess I would step back and I would look at it also through the lens of *Brady* and *Giglio*. We had testimony from Ms. Sanchez, where she indicated she gave access to as much as they wanted to, regarding her cell phone. And then, of course, we had the case agent who also indicated that they just chose to stop taking photographs of the text messages at a particular time. Now, if this indictment was only for that window of time, it does seem perhaps logical or forgivable to just focus on this time. But we also know that, based on again, Ms. Sanchez's testimony, that there were a great deal of text messages, no doubt, between 2016 and May or April of 2020, which is conduct that is described in the indictment in which the government, through law enforcement, had access to and chose not to capture or catalog. Again, I guess, from the Court's perspective, and I could be wrong here, again, through the lens of *Brady* and *Giglio*, I can't imagine that the spirit of that rule and that concept can be skirted by simply closing your eyes once you've seen what you need to see to establish – and I see skepticism in your face (referring to the AUSA). I may be wrong about this, but this isn't a situation where this information couldn't be located or it would require additional acts. They had the phone in their hands, and the government could have chosen just to indict through – the two weeks in which we have text messages, but the indictment

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 16 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH   Document 405   Filed 12/09/24   Page 16 of 19

describes conduct from 2016 to 2020, and we have no evidence of the communications during that time that was captured on the cell phone."[29] And later, "the problem here is at the core of this is that the communications have to be through an electronic device, correct? And we what we have regarding between 2016, and 2020 is no actual evidence of electronic communication."[30] Despite this colloquy, wherein Judge Kindred initially appeared to be considering a jury instruction, this instruction was not granted or given.

Later that same day, when Defense counsel initially made its Motion for Acquittal,[31] the Government indicated it was not prepared to respond.[32] It later requested an opportunity to respond in writing. Even after making closing argument, when the Court inquired as to whether or not a response to the Rule 29 motion had been made, the AUSA replied that she had not filed a response because, "I was going to wait and see what happened."[33] Despite indicating that, "[m]y preference is always to [rule] beforehand" Judge Kindred allowed the Government to sit on its response until after the verdict had been announced. However, by July 1, 2024, when counsel arrived back in the courtroom, Judge Kindred was quick to dismiss the Motion for Acquittal. Two days later, Judge Kindred submitted his resignation.

Although the Government may be correct that Y.S. alleged misconduct across a four-year period, testimony also indicated that the Government had the full opportunity to collect

---

[29] Transcript, Day 4 at 85-86 (parenthetical added for clarity).
[30] Transcript, Day 4 at 91-92.
[31] Transcript, Day 4 at 98-106.
[32] Transcript, Day 4 at 112.
[33] Transcript, Day 5 at 39.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 17 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH    Document 405    Filed 12/09/24    Page 17 of 19

*digital* corroboration in a *cyber*stalking case of this entire four-year period and instead decided to stop at 30 days prior to collection. What the Government's motion fails to address is that Rolando was not charged with committing cyberstalking over a thirty day period – he was charged with committing cyberstalking over a four year time frame, and charged with this in violation of a protective order, even though the protective order only existed for 30 days of the indictment, and corroborated evidence of Y.S.'s testimony only existed for 30 days of the indictment.[34] Fed. R. Crim P. 33 allows for the ordering of a new trial not only when "no reasonable jury" could have found a defendant guilty by proof beyond a reasonable doubt, but also when there is "prejudice to the defendant or a miscarriage of justice evident in the proceedings."[35] Despite the Government's contentions regarding the evidence presented during trial, the lack of corroboration over the course of a four-year indictment as well as *Brady* and evidentiary issues are sufficient to warrant the granting of a new trial.

---

[34] The irony in the Government's argument is that it both contends this Court should take Y.S.'s testimony at face value despite the FBI's failure to collect corroborating digital evidence of any events prior to May 2020, and yet calls into question AUSA "AUSA 1" credibility by highlighting that her "versions of the events are uncorroborated, in large part because of her apparent decisions to delete messages from Kindred and to communicate with him through an application that automatically deletes messages." The reality is that this missing evidence is substantial and makes it difficult, if not impossible, to ascertain Y.S.'s credibility involving events prior to May 2020 in case where Rolando is charged with cyberstalking, requiring the use of electronic means to commit the alleged crime.

[35] Fed. R. Crim. Pro. 33.

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 18 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH     Document 405     Filed 12/09/24     Page 18 of 19

## V. CONCLUSION

For the aforementioned reasons, this honorable Court should order an evidentiary hearing for the Defense to fully understand the misconduct and bias that encircle this case. Furthermore, Defense has established that Rolando is warranted a new trial, if for no other reason than that the appearance of bias and unfairness is sufficient to warrant such a new trial under the Due Process Clause. Finally, this Court should use its Supervisory Powers to dismiss this case with prejudice as the judicial and government misconduct is overwhelming in this case and warrants such a remedy.

Respectfully submitted this 9th day of December 2024.

/S/ Alexis Howell
645 G Street, Suite 100, #558
Anchorage, Alaska 99501
P: 907.677.8111 / F: 907.917.2075
Alaska Bar No.: 2305038

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 9th day of December 2024, a true and accurate copy of the Foregoing Document has been caused to be served via electronic filing to the parties, including:

AUSA Jennifer Lowe Ivers
AUSA Seth Beausang
AUSA Steven Clymer

/S/ Alexis Howell
Alexis Howell

AMENDED
REPLY TO GOVERNMENT'S OPPOSITION
TO MOTION FOR DISMISSAL OF INDICTMENT
OR NEW TRIAL
Page 19 of 19

*United States v. Hernandez-Zamora*
Case No.: 3:21-cr-00062-MAH-MMS

Case 3:21-cr-00062-MAH   Document 405   Filed 12/09/24   Page 19 of 19