IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:21-cr-00062-MAH-MMS |
| Plaintiff(s), | OPINION & ORDER (REDACTED) |
| v. | |
| ROLANDO HERNANDEZ-ZAMORA, | |
| Defendant(s). | |

S. Lane Tucker
United States Attorney
Jennifer Ivers
Assistant U.S. Attorney
Steven D. Clymer
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567

    Attorneys for Plaintiff

Alexis Howell
Carlson Law Group, LLC
645 G Street, Suite 100, #558
Anchorage, AK 99501

    Attorneys for Defendant

HERNÁNDEZ, Senior Judge:

This matter is before the Court on Defendant's Motion for Appropriate Relief: Dismissal of Indictment or Order of New Trial, ECF 276. For the reasons that follow, the Court grants Defendant's Motion for New Trial and denies Defendant's alternative Motion to Dismiss with prejudice.

## BACKGROUND

On May 19, 2021, Defendant Rolando Hernandez-Zamora was indicted on one count of cyberstalking in violation of 18 U.S.C. §§ 2261A(2)(A), (B), and 2261(b)(6).

On June 1, 2021, the matter was assigned to United States District Court Judge Joshua Kindred.[1]

On November 19, 2021, Defendant was charged in a superseding indictment with one count of cyberstalking in violation of a protective order violating 18 U.S.C. §§ 2261A(2)(A), (B), and 2261(b)(6).

In December 2021 Judge Kindred began texting frequently with a senior AUSA ("AUSA 1"), sending her "selfies," and telling her that he found her attractive. Gov't Resp., ECF 306, Ex. B at 2. Judge Kindred also began asking AUSA 1 to send him nude photographs of herself. *Id.* AUSA 1 agreed to share nude photographs of herself with Judge Kindred via the encrypted messaging app Signal, and "he agreed to delete everything." *Id.* AUSA 1 then began sending Judge Kindred nude photographs. *Id.* at 3. AUSA 1 also sent Judge Kindred text messages "describing how [she] would perform oral sex on him." *Id.* Judge Kindred would

---

[1] Judge Kindred resigned on July 3, 2024; however, he was a judge during the relevant period. The Court, therefore, refers to him as Judge Kindred in this Opinion and Order.

"frequently" send AUSA 1 texts "detailing . . . his fantasies of performing oral sex and anilingus on [her]." *Id.*

In November 2022, Chief United States Ninth Circuit Court Judge Mary Murguia "received information about possible misconduct by" Judge Kindred and "directed a limited inquiry under Rule 5 of the Rules for Judicial-Conduct and Judicial-Disability ('JC&D') Proceedings." Def. Mot., ECF 276, Ex. B at 2. AUSA 1 was "interviewed by the Ninth Circuit" about Judge Kindred's alleged misconduct in November 2022. Gov't Resp., Ex. B at 5. On December 27, 2022, Chief Judge Murguia "identified a misconduct complaint against Judge Kindred pursuant to 28 U.S.C. § 351(b) and JC&D Rule 5(a)" that stated "probable cause existed" that Judge Kindred

> (1) created a hostile work environment for one or more judicial employees by subjecting them to regular discussions about his personal life, including conversations of a sexual nature, and ostracized a judicial employee who raised concerns about this behavior; (2) engaged in unwanted physical sexual conduct with a former judicial employee and engaged in unwanted verbal sexual conduct with that employee both during and after her clerkship; and (3) told individuals with knowledge of his potential misconduct to remain silent.

*Id.* at 2–3.[2] Judge Kindred was provided an opportunity to respond, and he denied the allegations. *Id.* at 3.

In January 2023, AUSA 1 asked Judge Kindred to switch their communications from Signal to the encrypted messaging app Telegram. Gov't Resp., Ex. B at 5. AUSA 1 and Judge Kindred's interactions continued, although "less frequently." *Id.*

---

[2] The Court sets out only the facts that are immediately relevant to the Court's decision on the pending Motion. The Court notes, however, that the misconduct complaint, Special Committee report, and Judicial Council Order contain many extremely serious allegations and findings regarding Judge Kindred's actions towards and involving judicial employees and others.

On February 3, 2023, Chief Judge Murguia appointed a Special Committee to investigate the allegations against Judge Kindred and to report its findings and recommendations to the Judicial Council. Def. Mot., Ex. B at 3.

On February 20, 2023, AUSA 1 provided a statement in which she described her relationship with Judge Kindred as relatively distant and purely professional. *See* Gov't Resp., Ex. A. She stated: "I do not now, nor have I ever had, a romantic, intimate, or close personal relationship with Judge Kindred. I have not sought such a relationship with Judge Kindred. My relationship with Judge Kindred has always been courteous, but professional." *Id.* at 4.

AUSA 1 was interviewed "by the Ninth Circuit" in July 2023, but she did not tell Judge Kindred about the interview. Gov't Resp., Ex. B at 5. In the fall of 2023, Judge Kindred asked AUSA 1 if she had been interviewed. *Id.* AUSA 1 responded that she had been interviewed and had told them that her "relationship and communications with [Judge Kindred] . . . were consistent with [her] initial response . . . on February 20, 2023." *Id.*

In an October 2023 interview with the Special Committee, Judge Kindred "was confronted with evidence of inappropriate communications with" AUSA 1, but he "stated that he did not have a personal, inappropriate relationship with [AUSA 1] and that they never exchanged any inappropriate communications, including inappropriate photographs." Def. Mot., Ex. B at 25.

On March 4, 2024, the Special Committee submitted a 1,144-page report to the Judicial Council. On April 5, 2024, Judge Kindred presented oral argument to, and was questioned by, the Judicial Council. "At various points during that questioning, Judge Kindred admitted to certain conduct he had previously denied. He made these admissions only when specifically, and at times repeatedly, pressed with record evidence. Significantly, Judge Kindred admitted that he

had lied to the Special Committee." *Id.* at 12. Despite Judge Kindred's October 2023 representations about his interactions with AUSA 1, at the April 5, 2024, meeting, "confronted again with . . . contemporaneous evidence, he performed an about-face, stating that he received nude photographs from [AUSA 1] and that some flirtation occurred." *Id.* at 25.

On May 23, 2024, the Judicial Council issued an Order finding judicial misconduct, publicly reprimanding Judge Kindred, requesting Judge Kindred voluntarily resign, and referring the matter to the Judicial Conference to consider impeachment. *Id.* at 27.

On June 24, 2024, Defendant's case proceeded to trial. At the close of the government's case, Defendant moved for acquittal.

On June 28, 2024, the jury found Defendant guilty of cyberstalking. On July 1, 2024, Judge Kindred held oral argument on Defendant's Motion for Acquittal and denied the motion.

On July 3, 2024, Judge Kindred submitted his resignation to President Joseph Biden and his resignation became effective July 8, 2024.

On July 8, 2024, the Ninth Circuit made its Order regarding the investigation into Judge Kindred's actions and its conclusions public.

On July 19, 2024, Defendant filed a Motion for Appropriate Relief: Dismissal of Indictment or Order of New Trial.

On August 9, 2024, AUSA 1 submitted a statement in which she admitted that she had not been truthful in her February 20, 2023, statement regarding her relationship and interactions with Judge Kindred. Gov't Resp., Ex. B. She noted, among other things, that at Judge Kindred's request she began sending him nude photographs of herself in December 2021 via Signal; around that same time he began sending her sexually explicit texts and messages, to which she responded; after she received a January 2023 letter indicating Judge Kindred was being

investigated she suggested they switch their communications to Telegram; and although they communicated less frequently after January 2023, their interactions continued. *Id.* at 2–5.

On August 12, 2024, United States Senior District Judge Marco A. Hernández was designated by Chief Judge Murguia to perform the duties of a United States District Judge for the District of Alaska for this case.

This Court took the matter of Defendant's Motion for Appropriate Relief under advisement on September 13, 2024.

## STANDARDS

Federal Rule of Criminal Procedure 33(a) provides that on a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial is "directed to the discretion of the district judge," but Rule 33 motions are generally disfavored and should only be granted in "exceptional" cases. *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). Federal Rule of Criminal Procedure 25(b)(1) provides that "[a]fter a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability." Under Rule 25(b)(2), "[t]he successor judge may grant a new trial if satisfied that: (A) a judge other than the one who presided at the trial cannot perform the post-trial duties; or (B) a new trial is necessary for some other reason." *See United States v. Cloud*, No. 22-30173, 2024 WL 49808, at *1 (9th Cir. Jan. 4, 2024) (discussing transfer under Rule 25(b)).[3]

---

[3] The parties do not dispute that this Court is authorized to decide Defendant's Motion pursuant to Rule 25.

"Under its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is '(1) flagrant misbehavior and (2) substantial prejudice' and . . . 'no lesser remedial action is available.'" *United States v. Hankins*, No. 23-610, 2024 WL 2180082, at *2 (9th Cir. May 15, 2024) (quoting *United States v. Bundy*, 968 F.3d 1019, 1023, 1031 (9th Cir. 2020)).

## DISCUSSION

### I.  Motion for New Trial

Defendant asserts Judge Kindred should have disqualified himself from this matter pursuant to 28 U.S.C. § 455(a), which requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Defendant contends that, at the very least, Judge Kindred's relationship and interactions with AUSA 1 create the appearance of impropriety, and the interest of justice requires a new trial under the circumstances.[4]

"[R]ecusal is appropriate whe[n] 'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993)). "[T]he reasonable person is not 'hypersensitive or unduly suspicious, but rather instead a well-informed, thoughtful observer.'" *United States v. Federico*, No. 12-cr-00862-YGR-2 (HSG), 2018 WL 9802133, at *2 (N.D. Cal. Aug. 24, 2018) (quoting *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)). The standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest

---

[4] Defendant moves for a new trial on three grounds, including Judge Kindred's relationship with AUSA 1. Because the Court concludes a new trial is warranted on the basis of Judge Kindred's interactions and relationship with AUSA 1, the Court does not address Defendant's other grounds for new trial.

unsubstantiated suggestion of personal bias or prejudice." *Holland*, 519 F.3d at 913. Nevertheless, "[u]nder § 455(a), impartiality must be 'evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance.'" *Carey*, 929 F.3d at 1104 (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994) (emphasis in *Carey*)); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'") (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). "Disqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." *Holland*, 519 F.3d at 913.

In addition, "[t]he Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge." *Hurles v. Ryan*, 188 F. Supp. 3d 907, 916 (D. Ariz. 2016), *aff'd*, 914 F.3d 1236 (9th Cir. 2019). A judge must recuse from presiding over a case "when the likelihood of bias on the part of the judge 'is too high to be constitutionally tolerable.'" *Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009)); *see also Chen ex rel. Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 725–26 (9th Cir. 2022) ("[I]n *Caperton* . . ., the Court reaffirmed that due process requires a decisionmaker's recusal, not only when he or she 'has a direct, personal, substantial, pecuniary interest in a case . . ., but also when the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.") (internal citations and quotations omitted). The relevant question is not whether the judge "harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an

unconstitutional potential for bias." *Williams*, 579 U.S. at 8 (internal citation and quotation marks omitted).

The Court concludes that a reasonable person, *i.e.*, a well-informed, thoughtful observer, would have reasonably questioned Judge Kindred's impartiality regarding AUSA 1 under the circumstances. Even if Judge Kindred had no actual bias and did his best to "weigh the scales of justice" between Defendant and the government in Defendant's trial, the specific, unusual, and highly troubling facts of Judge Kindred's interactions and relationship with AUSA 1, give rise to at least the appearance of impropriety.

The government asserts that even if a reasonable person would reasonably have questioned Judge Kindred's impartiality as to AUSA 1, she did not make an appearance in Defendant's case and had a limited role in the matter. According to the government, therefore, Judge Kindred was not required to disqualify himself. The government notes that there are no reported decisions addressing recusal under § 455(a) when a judge has a personal relationship with an attorney who was not counsel representing a litigant, but who had some involvement in the case. The government points to various published Ethics Advisory Opinions to support its assertion that, under these circumstances, Judge Kindred was not required to recuse himself. For example, the government notes that in Published Opinion 11, the Committee on Codes of Conduct did not find that a judge must recuse himself when "one of the attorneys is . . . a long-time friend of the judge" and "a godfather of one of the judge's children." *Published Advisory Opinions*, United States Courts 18, https://www.uscourts.gov/rules-policies/judiciary-policies/ethics-policies/published-advisory-opinions. That opinion, however, explained that whether a judge must recuse himself under those circumstances was "not capable of answer by crisp formulation." *Id.* "Canon 2B prohibits a judge from allowing . . . social or various other

relationships to influence judicial conduct or judgment" and "directs judges not to convey or allow others to convey the impression that another person is in a special position to influence the judge." *Id.* In addition "Canon 3C requires a judge to recuse when the judge's impartiality might reasonably be questioned." *Id.* The Committee noted that even though a godfather is not a "relative" within the meaning of Canon 3C and "is not otherwise covered by any of the enumerated circumstances requiring recusal," recusal "may nonetheless be required if the circumstances are such that the judge's impartiality could reasonably be questioned." *Id.* Here, although AUSA 1 did not enter an appearance for the government in Defendant's case, she introduced herself to defense counsel on the second day of trial, was present in the courtroom throughout trial, spoke to the AUSAs assigned to the matter, and assisted the AUSAs with trial. AUSA 1 was involved in the matter to some extent and present while Judge Kindred was conducting the trial. AUSA 1's presence and assistance—combined with her interactions and relationship with Judge Kindred—are circumstances under which a reasonable person would reasonably question Judge Kindred's impartiality. In addition, the Court concludes that the average judge in Judge Kindred's position was not likely to be neutral. The Court therefore concludes that Judge Kindred was required to recuse himself from Defendant's trial, and his failure to do so violated § 455(a).

"Section 455 does not, on its own, authorize the reopening of closed litigation." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). Federal Rule of Criminal Procedure 33, however, provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Supreme Court has concluded that when determining whether a judgment should be vacated and a new trial ordered "for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the

particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864. In addition, courts must "continuously bear in mind that 'to perform [their] high function in the best way justice must satisfy the appearance of justice.'" *Id.* (quoting *In re Murchison*, 349 U.S. at 136 (citation omitted)).

The government suggests that the failure of Judge Kindred to recuse himself is harmless error because there was no reasonable possibility that prejudice resulted from the violation. Defendant points out, however, that the Supreme Court has held that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," including the right to an impartial judge. *Chapman v. California*, 386 U.S. 18, 23, 23 n.8 (1967) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

In addition, the facts here create "precisely the kind of appearance of impropriety that § 455(a) was intended to prevent. The violation is neither insubstantial nor excusable." *Liljeberg*, 486 U.S. at 867. Granting a new trial in this case will not produce injustice in other cases. In fact, the Court's willingness to enforce § 455(a) may prevent a substantive injustice in a future case by encouraging a judge to consider possible grounds for disqualification more carefully. Moreover, the Court finds that, under these circumstances, the risk of undermining the public's confidence in the judicial process if a new trial is not ordered is high. In summary, under these unique and extreme circumstances, the Court concludes Judge Kindred was required to recuse himself and that a new trial is warranted. Therefore, the Court grants Defendant's Motion for New Trial.

## II. Motion to Dismiss

Defendant asserts the Court should "dismiss [his] case with prejudice" due to Judge Kindred's judicial misconduct, prosecutorial misconduct, and insufficiency of evidence.

"A district court may dismiss an indictment under its inherent supervisory powers '(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.'" *Bundy*, 968 F.3d at 1030 (quoting *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010). "The court's exercise of its supervisory powers protects the integrity of the federal courts and prevents the courts from making . . . themselves accomplices in willful disobedience of law." *Id.* (internal quotation omitted). "A district court can dismiss an indictment under its supervisory powers even if 'the conduct does not rise to the level of a due process violation.'" *Id.* (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)).

"When considering an exercise of its supervisory powers, a district court has various options," including "[t]he most drastic remedy:" dismissal with prejudice, which "prevents the government from retrying the defendants at all." *Id.* at 1031; *see also United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (explaining that improper dismissal of "an indictment with prejudice encroaches on the prosecutor's charging authority") (internal quotation marks omitted); *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992) (Dismissal of an indictment with prejudice is a "drastic measure" that "necessarily implicates separation-of-powers principles. . . . Such dismissal exercised under the guise of supervisory power is impermissible absent a clear basis in fact and law for doing so.") (internal quotation marks omitted).

"Under its supervisory powers, a district court may dismiss an indictment with prejudice"

only when there is "(1) flagrant misbehavior and (2) substantial prejudice." *Bundy*, 968 F.3d at 1031 (internal quotation omitted). The "district court must approach the remedy with some caution and [] with a view toward balancing the interests involved and have concluded that there is 'no lesser remedial action' available to it." *Id.* (internal citation and quotation marks omitted). The phrase "no lesser remedial action is available" means that "any lesser sanction will put the defense at a greater disadvantage than it would have faced had the government" not engaged in the conduct at issue. *Id.* at 1043.

The Court has already determined that Defendant must be provided with a new trial. The Court also concludes that a new trial will not put the defense at a greater disadvantage than it would have faced had Judge Kindred recused himself. Therefore, the Court also concludes that Defendant has not established that there is "no lesser remedy available" than dismissal of this matter with prejudice. Therefore, the Court denies Defendant's Motion to Dismiss this matter with prejudice.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Appropriate Relief: Dismissal of Indictment or Order of New Trial, ECF 276. The Court grants Defendant's Motion for New Trial and denies Defendant's alternative Motion to Dismiss with prejudice.

IT IS SO ORDERED.

DATED:  September 27, 2024  .

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States Senior District Judge